# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-21-00345-CV

---

**T. R. G., Appellant**

v.

**Texas Department of Family and Protective Services, Appellee**

---

### FROM THE 201ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-19-008354, THE HONORABLE MAYA GUERRA GAMBLE, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Appellant T.R.G. (Mother) appeals from the district court's order, following a bench trial, terminating her parental rights to her daughter A.M., born February 4, 2015 (Daughter 1), son J.L., born January 31, 2016 (Son), and daughter T.J., born November 14, 2019 (Daughter 2). Counsel for Mother has filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 744 (1967). We will affirm the district court's termination decree.

The case began in November 2019, after a referral was made to the Texas Department of Family and Protective Services (the Department) based on Daughter 2's meconium drug screen returning positive for cocaine and marijuana. James Pickett, the intake supervisor for the case, testified that when the Department first met with Mother, she acknowledged using marijuana "on occasion" during her pregnancy but "adamantly denied using cocaine." However, Mother admitted that she had "gone to a few parties during her pregnancy,"

and she might have "touched it at some point." Mother also acknowledged using ecstasy the night before she first met with the Department. Based on the results of drug tests that Mother took at the beginning of the case, the Department suspected that Mother also used methamphetamine. Mother denied using methamphetamine and claimed that if she tested positive for that drug, it was because she had sex with a methamphetamine user.

The Department additionally had concerns regarding domestic violence between Mother and the children's father (Father).[1] Terry Cook, Mother's therapist during the case, testified that Mother told him that there had been "a lot of domestic violence" in their relationship and that "[e]very time [Father] would get a little intoxicated he would physically abuse her." There was evidence presented that the two older children, prior to removal, might have observed this violence, and multiple witnesses testified that the children exhibited aggressive behavior when they were first removed from Mother's care.

The domestic violence continued during the case. Officer Christopher Gutierrez of the Austin Police Department testified that in December 2020, he responded to a 911 call reporting a disturbance involving Mother and Father near the apartment complex where they were living at the time. When Officer Gutierrez arrived at the scene, he observed that Mother was crying and bleeding from her nose and "had some abrasions to her elbows and knees." After interviewing both Mother and Father, Gutierrez arrested Father for assault-family violence. Additionally, at the beginning of the case, Mother had a boyfriend who she acknowledged had assaulted her "once or twice." There was conflicting evidence as to whether Mother's relationship with this man had ended by the time of trial.

---

[1] Father's parental rights to the children were also terminated in the proceedings below, but he is not a party to this appeal.

To obtain the return of the children, Mother had been ordered to complete various services, including submitting to drug tests when requested by the Department, completing a substance-abuse evaluation, participating in psychological and psychiatric evaluations, completing nurturing-parent classes, engaging in individual therapy, participating in intensive outpatient treatment for substance abuse, and taking domestic-violence classes. Department caseworker Ariel Pierce testified that Mother had completed the psychological and psychiatric evaluations, attended the parenting classes, did her substance-abuse evaluation, went to some individual therapy sessions and two of three domestic-violence classes. However, Mother did not successfully complete her intensive outpatient treatment program, tested positive for illegal drugs in March and April 2020, and failed to take any drug tests after that, missing 45 requested drug tests during the case.

Pierce testified that the children had been placed in a foster home and that the Department's plan for the children was adoption by the foster placement. The foster mother testified that she wanted to adopt the children and described in detail the steps she had taken to address the older children's behavioral problems. The older children's therapist testified that their aggressive behavior had improved considerably since being placed with the foster family.

Sierra Moore, the CASA volunteer assigned to the case, testified that when she visited the children in their current placement, she observed them to be "safe and happy," "very active," and "content where they were." Moore also testified that the children were bonded with each other in their current placement, that the placement was a "really great fit" for the children, and that the placement provided the children with stability and was able to meet their physical and emotional needs.

3

At the conclusion of trial, the district court found that termination of Mother's parental rights was in the best interest of the children and that Mother had: (1) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children; and (2) failed to comply with the provisions of a court order that specifically established the actions necessary to obtain the return of the children who had been in the conservatorship of the Department for not less than nine months as a result of the children's removal from the parent under Chapter 262 for the abuse or neglect of the child. *See* Tex. Fam. Code § 161.001(b)(1)(E), (O), (2). This appeal followed.

Court-appointed counsel has filed an *Anders* brief concluding that the appeal is frivolous and without merit. *See* 386 U.S. at 744; *In re P.M.*, 520 S.W.3d 24, 27 & n.10 (Tex. 2016) (per curiam) (approving use of *Anders* procedure in appeals from termination of parental rights because it "strikes an important balance between the defendant's constitutional right to counsel on appeal and counsel's obligation not to prosecute frivolous appeals" (citations omitted)). The brief meets the requirements of *Anders* by presenting a professional evaluation of the record and demonstrating why there are no arguable grounds to be advanced on appeal. *See* 386 U.S. at 744; *Taylor v. Texas Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 641, 646-47 (Tex. App.—Austin 2005, pet. denied). Counsel has certified to this Court that she has provided her client with a copy of the *Anders* brief and informed her of her right to examine the appellate record and to file a pro se brief. No pro se brief has been filed.

Upon receiving an *Anders* brief, we must conduct a full examination of the record to determine whether the appeal is wholly frivolous. *See Penson v. Ohio*, 488 U.S. 75, 80 (1988); *Taylor*, 160 S.W.3d at 647. After reviewing the entire record and the *Anders* brief

4

submitted on Mother's behalf, we have found nothing in the record that might arguably support an appeal. Our review included the district court's endangerment finding, *see* Tex. Fam. Code § 161.001(b)(1)(E), and we have found no issues that could be raised on appeal with respect to that finding, *see In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019). We agree with counsel that the appeal is frivolous. Accordingly, we affirm the district court's termination decree.

_____

Gisela D. Triana, Justice

Before Justices Goodwin, Triana, and Kelly

Affirmed

Filed: October 27, 2021